# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) 2:13-CR-112-PPS-PRC |
| v. | ) |
| MICHAEL RADOVICK, | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Defendant Michael Radovick moves to suppress evidence obtained during the search of a house in Gary, Indiana. [DE 29]. He makes two arguments. First, the search warrant did not actually authorize the search of the house. Whoever typed up the warrant forgot to list the house as the place to be searched, so Radovick argues the warrant fails the Fourth Amendment's particularity requirement. Second, he argues the warrant affidavit failed to establish probable cause. The affidavit was based solely on the information from a recently arrested informant who Radovick argues was too untrustworthy to be believed. I held a hearing on the motion on February 14, 2014 where both sides presented their arguments. Because I agree that there was no probable cause for the search, Radovick's motion is **GRANTED**.

## BACKGROUND

The affidavit in support of the warrant is confusing and poorly written. The description of the facts as set forth below is my best effort to fairly summarize the contents of the affidavit (DE 29-1).

At 3:29 a.m. on September 9, 2013, police dispatch sent Hammond Police Officers David Pardonek and E. Salazar to the scene of a home invasion. Once the officers arrived, the victim

told them that he was in bed when he heard a noise outside. He got out of bed and went outside to investigate. When he got outside, he saw a Hispanic male opening the screen door at the back of his house and another Hispanic male opening the sliding door on the other side of the house. The victim ran back inside, got a gun, and walked over to the sliding door. The suspect at the door saw this and pointed a handgun at him. In response, the victim fired his own gun several times. The suspect fled, and the victim waited for police to arrive. He reported that the burglars had stolen a gold chain, a laptop computer, and a .38 caliber handgun.

He then told police that his house had also been broken into at 10:00 a.m. the previous day, September 8, 2013. That time, the burglars had stolen two guns and house keys. He told police that, during the September 8 burglary, his neighbor had seen an older-model gold Ford Taurus in his driveway and that the same car had left the scene after the just-completed burglary.

While they were completing their offense report, Officers Salazar and Pardonek noticed a Hispanic male, who fit the description of a suspect, skulking between houses in the neighborhood. Officer Pardonek saw the man, later identified as Jason Vasquez, walking towards a gold Mercury Sable, which was a dead-ringer for the late-model Taurus described by the neighbor.[1] After Pardonek detained Vasquez, the victim positively identified Vasquez as the person trying to break in to his house by the sliding door.

Vasquez was taken to an interview room at the police station where, after waiving his rights, he began to tell police about the burglary. Vasquez said the burglary was committed by a

---

[1] Mercury Sables and Ford Tauruses are both made by divisions of the Ford Motor Company and are virtually identical cars. *See* Kirill Ougarov, *Mercury's Biggest Hits and Misses*, Motor Trend, June 2, 2010, *available at* http://www.motortrend.com/features/consumer/1006_mercury_biggest_hits_and_misses/viewall.html.

man he called "Pug." According to Vasquez, Pug had told him that the victim owed him money, and Pug wanted Vasquez to help him collect. Vasquez said that he drove Pug to the house and dropped him off. Pug came back some time later with a laptop computer and a small duffel bag. They then drove to some railroad tracks where Pug got out of the car and picked up a shotgun and a pistol. Vasquez says that he drove Pug back to Pug's house. Once there, Pug took the shotgun, pistol, and duffel bag into his house and gave Vasquez the laptop as "collateral."

As I'll explain below, there is some confusion about whether Vasquez was describing what had happened on September 9th before he got caught or whether he was describing what had happened on September 8th. For now, I'll just note that, according to the affidavit, Vasquez said that "he along with 'Pug' were involved in *this* burglary." (DE 29-2 at 2) (emphasis added). The paragraph immediately preceding that sentence says that the victim identified Vasquez as the person who he saw breaking into his house at 3 a.m. on September 9th. So I read "this burglary" as referring to the September 9th incident, meaning Vasquez is describing what happened that day.

After some more questioning, Vasquez revealed that Pug's real name was Michael Radovick. An officer showed Vasquez an unidentified photograph, and Vasquez confirmed that it was a photo of the person he knew as Pug. Presumably this was a photograph of Radovick though that's not clear from the affidavit. Vasquez then accompanied an officer to point out the house where he had dropped Radovick off with the stolen items. The address was 2354 Sherman Street, Gary, Indiana.

Lieutenant Mark Detterline filled out the affidavit on September 9, 2013, asserting that probable cause existed to search the house at 2354 Sherman Street and to seize Radovick, the

gold chain, laptop, keys, the .38 caliber handgun, jewelry and the fruits of instrumentalities of burglary. Judge Jeffrey A. Harkin of the Hammond City Court issued the warrant that same day at 7:00 p.m.

The search warrant itself is entirely confusing. It fails to mention the place to be searched at all. In other words, it doesn't say anything about 2354 Sherman Street. Instead, oddly, it says that the officers were authorized to "search" the items described above – i.e. the gold chain, the keys, the jewelry etc. How one goes about searching, for example, a "gold chain" is not entirely clear. Undoubtedly, this was an error. Those were the items to be *seized*, not searched. In any event, what is clear, is that the warrant fails to mention the Sherman Street address at all. But search it they did, and in doing so the police found the stolen handgun and some other items as well (DE 1).

**DISCUSSION**

Radovick makes two arguments for suppression. He argues that warrant fails the particularity requirement because it did not authorize a search of the house. I'll tackle that argument first and then turn to his other argument: that the search warrant was not supported by probable cause.

**A. Particularity**

The Fourth Amendment requires that a search warrant "particularly describ[e] the place to be searched." U.S. Const. amend. IV. If a warrant fails to do so, it is void. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) (citing *Horton v. California*, 496 U.S. 128, 139-40 (1990)). For whatever reason, the warrant in this case only lists the items to be seized: Radovick, the gold chain, computer, etc. (DE 29-1). It does not describe the place to be searched at all.

Ordinarily, that would be the end of the inquiry; the warrant would be void and I would move on to the question of good faith. But the government argues that the warrant is saved from invalidity because the warrant affidavit was incorporated into the warrant by reference, and the warrant affidavit did particularly describe the place to be searched.

It is permissible for a warrant to incorporate by reference the place to be searched or the items to be seized. *See U.S. v. Jones*, 54 F.3d 1285, 1290 (7th Cir. 1999), *cert. denied*, 516 U.S. 902 (1995); *U.S. v. Nafzger*, 965 F.2d 213, 215 (7th Cir. 1992); *U.S. v. Trzeciak*, 2:04-CR-62 PS, 2005 WL 6718592 (N.D. Ind. July 28, 2005) *aff'd*, 215 F. App'x 519 (7th Cir. 2007) (upholding the validity of a warrant that incorporated by reference the address of the place to be searched). In most cases, incorporation by reference requires both that the warrant explicitly incorporate the affidavit and also that the affidavit be attached to the warrant. *See Groh v. Ramirez*, 540 U.S. 511, 557-58 (2004) (collecting cases). Neither of those conditions obtain here, but the Seventh Circuit has held that neither is necessary so long as the judge issuing the warrant considered the affidavit and the officers conducting the search complied with the limits that were set out in it. *Jones*, 54 F.3d at 1290-1292; *U.S. v. Dennis*, 115 F.3d 524, 529 (7th Cir. 1997); *Nafzger*, 965 F.2d at 215; *see also Hale v. United States*, 1:08 CV 94, 2010 WL 2921634 (N.D. Ill. July 22, 2010) *adhered to on denial of reconsideration*, 1:08 CV 94, 2011 WL 5104630 (N.D. Ill. Oct. 27, 2011) *aff'd*, 710 F.3d 711 (7th Cir. 2013).

Although it was sloppy to fail to specifically delineate in the warrant the address of the location to be searched, given the above caselaw, that is not grounds to invalidate the warrant. There's no question that the warrant affidavit provides the requisite specificity regarding the place to be searched. The affidavit includes the address, physical description, parcel number and

legal description of the house (DE 29-2 at 3). It is also evident that Judge Harkin considered the affidavit as it was sworn to in front of him before he issued the warrant. Finally, there has been no argument that police expanded their search beyond the house at 2354 Sherman Street. So Radovick's first argument fails.

B.     **Probable Cause**

A more difficult issue is whether the warrant was supported by probable cause. When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, "the validity of the warrant rests solely on the strength of the affidavit." *U.S. v. Mykytiuk*, 402 F.3d 773, 775 (7th Cir. 2005) (*citing U.S. v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003)). A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search warrant will uncover evidence of a crime. *Id.*

The affidavit here is based entirely on information the police received from the informant, Jason Vasquez. When information from an informant is used to establish probable cause, courts should assess the informant's credibility by considering the following factors: (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and the application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant. *Id.* (*citing U.S. v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002); *U.S. v. Jones*, 208 F.3d 603, 609 (7th Cir. 2000).

Before digging into the credibility factors, I'll first note that Vasquez is, at best, an unreliable informant because there is no indication that he had given the police information

before. *See, e.g., Koerth*, 312 F.3d at 867. So this is not a case like *U.S. v. Sutton*, 742 F.3d 770, 772 (7th Cir. 2014), where the informant had provided useful information to the police in the past. Further, at the time Vasquez gave his statement, he had just been arrested for burglary. The government argues that these circumstances enhance Vasquez' credibility because, in confessing to his role in the burglary, he gave a statement against penal interest. *See, e.g. U.S. v. Olson,* 408 F.3d 366, 371 (7th Cir. 2005) (noting admissions against penal interest carry a presumption of reliability). Perhaps that is true in some circumstances, but in this case, where Vasquez is essentially caught red-handed, I believe it mostly cuts the other way. Statements of newly arrested informants are viewed with a healthy dose of skepticism. *Olson*, 408 F.3d at 371. And with good reason; newly-arrested informants are usually trying to curry favor with their captors, and they have a strong incentive to downplay their own role in a crime or shift the blame to someone else. *Id.*; *Williamson v. U. S.*, 512 U.S. 594, 607-08 (1994).

That skepticism is warranted here because it looks like Vasquez tried to do exactly that. Caught committing an armed burglary, Vasquez essentially told police he was just the driver for his buddy Radovick and that the whole thing was Radovick's idea anyway (DE 29-2 at 2). So at best we are dealing with an informant of unknown reliability. And, at worst, with an unreliable informant. In either instance, Vasquez's statements cannot be accepted simply at face value.

So are there other credibility factors that justify putting aside that skepticism? Well, Vasquez has two things going for him right off the bat: he personally observed the events in question, and the police applied for the warrant on the same day that the events occurred. But apart from those, the credibility factors tend to tilt the other way.

A case in point is the degree of detail in the statement. The idea behind this factor is that

the more detail an informant is able to provide, the less likely it is that the informant is just making things up. *See, e.g., Jones*, 208 F.3d at 609 (finding probable cause based, in part, on an informant's "specific and detailed" information about the suspect). Vasquez did provide details. Although he didn't describe the burglary itself, he provided a detailed account of its aftermath, reporting that Radovick had returned to the car with a laptop and duffel bag, that they then picked up a shotgun and handgun from a spot near the railroad tracks where Radovick presumably had stashed them after the burglary, and that Vasquez had dropped Radovick off at his house after they split the ill-gotten gains (DE 29-2 at 2).

So the degree of detail is not the problem. Instead, the problem is that many of the details are flatly contradicted elsewhere in the affidavit. It starts with the fact that Vasquez claimed he was just the driver. (*See* DE 29–2 at 2, sixth full ¶). Yet the victim said it was *Vasquez* who tried to break into his house. Vasquez claimed Radovick, who is white, did the burglary alone, but the victim identified two Hispanic men as the assailants. Finally, Vasquez said that, after the robbery, he picked Radovick up and dropped him home. But the police caught Vasquez at the scene before he could get back to his car. There's just no way to square Vasquez's account with other facts set forth in the affidavit.

As should be plain by now, and as I stated at the outset, the warrant affidavit is confusing. The government argues the confusion stems from the fact that the affiant, Lieutenant Detterline, conflated two separate burglaries: one that occurred at 10:00 a.m. on September 8 and one that occurred in the early morning hours of September 9. If true, this would resolve some of the more glaring contradictions because Vasquez can be read as describing the September 8 burglary, while the victim is describing the September 9 burglary. Unfortunately this scenario is

impossible to glean from the affidavit. When assessing probable cause, I can only look to the four corners of the affidavit. *Koerth*, 312 F.3d at 866 (when an affidavit is the "only evidence presented to the warrant issuing magistrate, the warrant must stand or fall solely on the contents of the affidavit"). There is just no way to read the affidavit the way the government suggests. For one thing, the affidavit does not indicate that Vasquez is talking about the September 8 burglary. In fact, it is the opposite. As I pointed out, when the affidavit states that Vasquez was describing "this burglary," the referent of "this" was the September 9 incident (DE 29-2). The affidavit says almost nothing about the September 8 burglary; it is mentioned once and then not referred to again. Moreover, the one thing the affidavit does say about the September 8 burglary was that the burglars stole house keys and guns. *Id.* But, in recounting his story, Vasquez says that Radovick stole a laptop. *Id.* The laptop was stolen on September 9. *Id.* at 1. So Vasquez had to have been talking about the September 9 burglary. Thus we are back where we started with a confusing affidavit and an informant whose story seems full of holes.

Things don't get better with the corroboration factor. The Hammond police did next to nothing to corroborate Vasquez's allegations against Radovick. It is true that the police showed Vasquez "a single unidentified photograph and asked if he recognized said subject." (DE 29-2 at 3.) And Vasquez did identify the man in the picture as Radovick. But beyond that, they really did nothing else. The government points out that the police drove Vasquez to the house to confirm the address. But this was a meaningless exercise because essentially all it meant was the informant was corroborating himself. The point is that the police failed to *independently* corroborate what Vasquez had to say. And it is independent corroboration that courts have found sufficient in the past. For example, the police didn't find another source of information

connecting Radovick to the burglary. *See*, *e.g.*, *Olson*, 408 F.3d at 372 (finding an anonymous tip corroborated informant's story). They didn't run Radovick's criminal history to see if he was associated with similar activity in the past. *Id.* (finding a criminal records check offered "some corroborative value" to an arrestee informant's allegations). Nor did they attempt to corroborate Vasquez' claim that Radovick actually lived at the Sherman Street house through, say, surveillance or records checks. *See Jones,* 208 F.3d at 605 (corroborating suspect's alleged presence at a house by checking registration of cars parked outside). So Vasquez's statements regarding Radovick were essentially uncorroborated.

Finally, the police didn't present Vasquez to Judge Harkin. Affidavits based on information from shaky informants can be sometimes be salvaged by hauling the informant in front of the issuing judge. It provides the judge with the opportunity to assess the informant's credibility first-hand and address any concerns he might have about the informant's statement. *Jones*, 208 F.3d at 609; *see also Sutton*, 742 F.3d at 775 (finding a confidential informant's personal appearance before a judge "weighs significantly in favor of the CI's credibility"). Here that didn't happen. All Judge Harkin had to go by were Vasquez's statements as put down in the affidavit.

That wasn't enough. The uncorroborated, inconsistent statements of an unreliable informant are not sufficient to establish probable cause. *Peck*, 317 F.3d at 757; *Koerth*, 312 F.3d at 868; *U.S. v. Simmons*, 771 F. Supp. 2d 908, 922 (N.D. Ill. 2011). I therefore agree with Radovick that probable cause was lacking in the affidavit in support of the warrant.

C. **Good Faith**

Even though the warrant was invalid, suppression of evidence is not the inevitable

consequence. *See U.S. v. Leon*, 468 U.S. 897, 913 (1984) A facially invalid search warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. *Id*. An officer's decision to obtain a warrant is prima facie evidence that he was acting in good faith. *Mykytiuk*, 402 F.3d at 777. A defendant can rebut this evidence by demonstrating that the issuing judge failed to perform his neutral and detached function by serving as a rubber stamp for the police, or that the officer was dishonest or reckless in preparing the affidavit. *U.S. v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009). Furthermore, police officers are charged with the knowledge of well-established legal principles, as well as an ability to apply the facts of a particular situation to these principles. *Koerth*, 312 F.3d at 869; *Mykytiuk*, 402 F.3d at 777. So the good faith exception does not apply where (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand, or (2) where the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. *U.S. v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006) (citing *Koerth*, 312 F.3d at 869).

Radovick does not claim Judge Harkin acted as a rubber stamp. But he does argue that Lieutenant Detterline acted recklessly or dishonestly in preparing the affidavit. He claims Detterline did this by deliberately omitting the fact that Radovick was not Hispanic from the affidavit (DE 34 at 6). Radovick has moved for a *Franks* hearing on the issue (DE 21). But I am not going to address that issue right now because I believe the good faith issue can be resolved in a more straightforward way. Namely, the affidavit was so inadequate that the officers should have known it was no good.

The Seventh Circuit has repeatedly held that affidavits based on uncorroborated, conclusory allegations made by unreliable informants do not establish probable cause. *Mykytiuk*, 402 F.3d at 776-77; *Koerth*, 312 F.3d at 868; *Peck*, 317 F.3d at 756; *U.S. v. Bell*, 585 F.3d 1045, 1051-52 (7th Cir. 2009); *Owens v. U.S.*, 387 F.3d 607, 608 (7th Cir. 2004); *U.S. v. Savage*, 59 Fed. Appx. 821, (7th Cir. 2003). Other courts have arrived at the same conclusion. *Simmons*, 771 F. Supp. 2d at 922; *Draine v. Bauman*, 708 F. Supp. 2d 693, 705 (N.D. Ill. 2010); *U.S. v. Pollard*, 2007 WL 1302724, at *3 (E.D. Wis. May 2, 2007); *U.S. v. Harju*, 384 F. Supp. 2d 1278, 1284 (E.D. Wis. 2005), *rev'd on other grounds* 466 F.3d 602 (7th Cir. 2006); *U.S. v. Cunningham*, 145 F. Supp. 2d 964, 968 (E.D. Wis. 2001).

The closest cases are *Mykytiuk* and *Koerth*. In *Koerth*, the affidavit was based on the word of a previously unknown informant who claimed he saw a large amount of marijuana, methamphetamine, cocaine, and money at the defendant's house. *Koerth*, 312 F.3d at 867. Despite the fact that the informant had first hand knowledge of the activity, provided some detail, and gave a statement against penal interest, the court held that there was no probable cause because the police had not corroborated the informant's story and the informant did not appear before the magistrate. *Id.* at 868. Therefore, to uphold the probable cause determination would have been to impermissibly "ratify the search of a home based on the use of essentially conclusory statements without corroboration." *Id.*

In *Mykytiuk*, the informant had just been arrested for manufacturing methamphetamine. 402 F.3d at 775. He claimed that he had stolen the meth-making ingredients from Mykytiuk, and that Mykytiuk kept his own cache of meth ingredients in buckets stored in vehicles parked in his driveway. *Id.* at 775. Again, the uncorroborated statements of an unreliable informant were not

sufficient to provide probable cause. *Id.*

It is true that in both *Koerth* and *Mykytiuk,* despite the deficiencies in the warrant, the Seventh Circuit applied the *Leon* good faith exception and upheld the warrants in those cases. But at some point, the government ought not be able to continue to rely on *Leon's* good faith exception in defending identically faulty warrants. In other words, it cannot be said that the officers are acting in "good faith" any longer when they are doing the very thing they have been repeatedly told not to do – rely on the uncorroborated statements of an unreliable informant. *Peck*, 317 F.3d at 757; *Koerth*, 312 F.3d

What's more, in an important way this is an even worse case. As shown above, Vasquez's statements are not just uncorroborated, they are expressly *contradicted* by the victim and the officers at the scene. A reasonably well trained officer would have known that Vasquez's statements alone could not provide probable cause. Therefore the good faith exception does not apply.

## CONCLUSION

The affidavit in this case failed to establish probable cause and the good faith exception does not apply. Accordingly, defendant Michael Radovick's motion to suppress evidence [DE 29] is **GRANTED**.

**SO ORDERED.**

ENTERED: April 7, 2014

s/ Philip P. Simon

PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT